Rowan **KELLY**

v.

**WARMINSTER TOWNSHIP BOARD OF SUPERVISORS et al.**

**Civ. A. No. 78–3212.**

United States District Court,
E. D. Pennsylvania.

March 18, 1981.

Ward F. Clark, Doylestown, Pa., for plaintiff.

Louis E. Bricklin, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

GILES, District Judge.

The issue raised by defendants' motion to dismiss is whether either under the principles of *res judicata* or collateral estoppel this federal action for damages for alleged violations of constitutional and statutory rights[1] is barred by reason of a prior state

---

1. Federal jurisdiction is invoked pursuant to 28 U.S.C. § 1331, 42 U.S.C. §§ 1983 and 1985 and the Equal Protection Clause of the Fourteenth

Amendment of the United States Constitution. Claim also is asserted under a non-existent "28 U.S.C. § 1454."

court proceeding. There, plaintiff's discharge from public employment was upheld on the same matrix of facts, according to defendants, as is involved in this action.[2]

Plaintiff, Rowan P. Kelly, Jr., former township Chief of Police of Warminster Township, was charged on September 27, 1976 with 39 instances of conduct unbecoming an officer and after a public hearing was found responsible as to 29. A record was made of the administrative hearing before the Warminster Township Board of Supervisors ("Board"). An appeal was taken from the adverse decision to the Pennsylvania Court of Common Pleas of Bucks County. After reviewing the record below, the Honorable Harriet M. Mimms upheld the dismissal action by Opinion and Order dated February 8, 1978 (hereinafter "Common Pleas Opinion"). Thereafter, a timely appeal was taken to the Pennsylvania Commonwealth Court which on April 5, 1979 affirmed the ruling below (hereinafter "Commonwealth Court Opinion"). Plaintiff's Petition for Allowance of Appeal to the Pennsylvania Supreme Court was denied by order of January 3, 1980 (hereinafter "Pennsylvania Supreme Court Order"). As part of his Petition, plaintiff attached a Summary of Argument (hereinafter "Summary of Argument").

The complaint in this court was filed on September 26, 1978. Pending the outcome of the state court appeals, proceedings in this action had been stayed by court order. With denial of the Petition for Allowance of Appeal, plaintiffs efforts here were renewed. Since matters outside the pleadings have been presented or referenced for consideration, i. e., the administrative record and the state court opinions and orders, and the parties have had full opportunity to argue on their applicability, the motion to

dismiss will be treated as one for summary judgment under Rule 12(b)(6), Fed.R.Civ. Pro. See DeTore v. Local # 245, 615 F.2d 980, 983 (3d Cir. 1980). In addition, I have reviewed the record proceedings before the administrative board and the Court of Common Pleas in assessing the motion to dismiss the § 1983 action based on estoppel. Kauffman v. Moss, 420 F.2d 1270, 1274 (3d Cir. 1970), cert. denied, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970).

## I. THE STATE COURT PROCEEDINGS

Plaintiff was hired as Police Chief in December, 1974 and was granted tenure by the Board of Supervisors a year later in December, 1975. The plaintiff promulgated a policy within the police department that all police business was to be kept confidential and any employee revealing any orders or directives of the plaintiff to persons outside the department would be disciplined. The authority to govern the police department rests with the Board. When a police lieutenant, defendant Conrad Yeager, a twenty year veteran of the department was suspended by the plaintiff, without approval of the Board, for revealing one of his "confidential" general orders, an intensive general investigation of the plaintiff's conduct in office was undertaken by the Township Manager. This led to the dismissal action. (Common Pleas Opinion, p. 1, 5–6). Plaintiff demanded an appeal hearing, pursuant to the Police Tenure Act, June 15, 1951, P.L. 586, 53 P.S. § 811 et seq., to test the truth or falsity of the charges against him. The hearing was conducted before the Board. After five days of proceedings and approximately 750 pages of transcript, the Board reaffirmed the original discharge action (Common Pleas Opinion, p. 1).

---

**2.** There is no allegation in the complaint that the statutorily specified state procedures for effectuating the discharge were not followed or that plaintiff was terminated for an impermissible reason. Nor does plaintiff contend that the factual determinations in the state court proceedings were contrary to the record evidence. See, Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); Olson v. Borough of Homestead, 417 F.Supp. 784, 787 (M.D., Pa.

1976), aff'd 568 F.2d 769 (3d Cir. 1978) (any property interest in public employment derives from state law, not the federal constitution). Although there is an assertion of a § 1985 conspiracy, there is no allegation that plaintiff is the victim of invidious discrimination, or is a member of a suspect classification. Rogin v. Bensalem Township, 616 F.2d 680, 696 (3d Cir. 1980).

Although plaintiff was represented at the hearing before the Board by two able attorneys, he elected not to testify or offer any evidence on his own behalf as a matter of strategy, choosing to save his evidence for an appeal to the Court of Common Pleas should the dismissal be confirmed. (*Id.*, at 2)[3] The Board also made itself available to answer questions regarding allegations plaintiff may have had as to any actual bias on the part of any member of the Board. Plaintiff, however, chose not to take full advantage of the offer, again for tactical reasons. (Common Pleas Opinion, p. 12).

Following the adverse determination before the Board, plaintiff appealed to the Court of Common Pleas of Bucks County. He claimed that the Board was inherently biased because of commingled investigatory, prosecutorial and adjudicatory functions, that the Board members were actually biased and that he was denied substantive and procedural rights at the hearing.

Plaintiff attempted to persuade the Court of Common Pleas that he should be allowed to present evidence that might have otherwise been presented in the administrative hearing. His argument was rejected on two grounds. First, the court found that plaintiff was not entitled as of right to supplement the record. The determination of the adequacy of the record to meet the review standard of clear and convincing evidence was held to be committed to the sound discretion of the court[4] and in his case, the record was sufficiently full and complete to demonstrate that the dismissal action was well founded. (Common Pleas Opinion, p. 2). Second, the court concluded that plaintiff had had every right and opportunity to present substantive evidence in his own behalf and that his substantive and procedural rights had been meticulously protected (*Id.*, at 12).[5] The Commonwealth Court ruled that the court below had not abused its discretion in refusing to take additional testimony under circumstances where the absence of testimony or evidence was solely the result of his own decision made with the assistance of counsel. It affirmed that there was clear and convincing evidence of misconduct by plaintiff warranting his discharge, (Commonwealth Court Opinion, p. 2–3).[6] It also found from

**3.** The Board retained independent counsel to advise it during the hearings. (Common Pleas Opinion, p. 12)

**4.** The court held that while the Police Tenure Act was silent on the subject, it was clear under the Local Agency Law of December 2, 1968, P.L. 1133, 53 P.S. § 11308 (repealed Apr. 28, 1978, 42 P.S. § 20002 [1429]; substantially reenacted 2 Pa.C.S. Ann. § 754 *et seq.* (Supp. 1980)) and by case law, that the sound discretion of the court controls in determining whether judicial review shall be *de novo.* (Common Pleas Opinion, p. 2).

**5.** At a hearing, the Common Pleas Judge gave plaintiff an opportunity to supplement the record with relevant evidence which he was demonstrably precluded from offering in the administrative proceedings or evidence that was unavailable to him. He did not satisfy the court that such evidence existed. *Kelly v. Warminster Township*, No. 76–10978–10–6, Tr. at 37–38, 53–59 (C.P. Bucks, Apr. 21, 1977).

**6.** Plaintiff's misconduct was found to be violative of numerous aspects of codes of conduct for police officers. Among the violations were (1) a physical and verbal assault on a district justice as well as physical assaults on other persons at other times; (2) issuance of a gener-

al order, without approval by the Board or township manager directing police officers not to enforce Sunday blue laws; (3) taking improper liberties with female employees of the police department, including soliciting an unnatural sex act, a "blow job", from one female employee and unzipping the jacket and kissing another female employee against her wishes; (4) consorting with a married woman, not his wife, around the police station and in public; (5) directing the non-enforcement of the laws in a troubled situation until the antagonists had fought it out and the winners could be arrested; (6) being intoxicated while on duty; (7) promulgation of a general order, to be kept secret, regarding reporting of the bail policy of a district justice; (8) use of profane and vulgar language; (9) violating the collective bargaining agreement; (10) promulgation of a general intra-department secrecy order that forbade disclosure by any employee of the department of any orders or directives of the chief of police to non-members of the department, including the township manager or board of supervisors on pain of discipline—many of the orders being sarcastic and threatening to department employees; (11) suspending a 20 year veteran of the police force, Lieutenant Conrad Yeager, a defendant herein, for allegedly breaching that secrecy order. (Common Pleas Opinion, pp. 5, 15–17).

the record that petitioner's due process rights were not violated in any respect. *Id.*

Although plaintiff had unsuccessfully challenged the constitutionality of the Police Tenure Act below, he raised for the first time on appeal to the Commonwealth Court an equal protection of the laws argument. In effect, he contended that in having to proceed under the Police Tenure Act, township policemen were not given the same due process protections as borough policemen who are subject to the Borough Code, Act of February 1, 1966, P.L. (1965) 1656, 53 § 45101 *et seq.*[7] The court declined to reach this last issue since it had not been properly raised in or considered by the court below. (Commonwealth Court p. 4)[8]

Plaintiff then petitioned for allowance of appeal to the Pennsylvania Supreme Court raising the equal protection argument as well as all his other contentions. That petition was denied.

Plaintiff resists the defendants' motion to dismiss arguing that (1) he was denied the opportunity to litigate fully the constitutionality and legality of his firing before either the Board or the Court of Common Pleas; (2) the Board members were actually biased against him, having conspired prior to the hearing to fire him; (3) he has sued parties who were not parties in the state court action; and (4) the equal protection of the laws issue was not raised or decided in the prior action.

## II. RES JUDICATA

Defendants argue first that the complaint must be dismissed under principles of *res judicata* because it involves the same cause of action, the same set of facts and the same parties or their privies. *Res judicata* operates to bar "repetitious suits involving the same cause of action and rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations." *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 578, 94 S.Ct. 806, 811, 39 L.Ed.2d 9 (1973) quoting from *Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948) and *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1877).

"[W]hen a court of competent jurisdiction has rendered final judgment on the merits of a cause of action, both the parties to the suit and their privies are thereafter bound not only to every matter actually raised but also as to every other admissible matter which might have been offered for the same purpose."

*Sea-Land, supra*, 414 U.S. at 578–579, 94 S.Ct. at 812. *See, Allen v. McCurry*, —— U.S. ——, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (doctrines of *res judicata* and collateral estoppel held to apply to 42 U.S.C. § 1983 claims).

For the doctrine of *res judicata* to apply there must be a concurrence of four conditions: (1) identity of theory sued upon; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of quality or capacity of the parties suing or being sued. *Holt Hauling & Warehousing v. Rapistan, Inc.*, 448 F.Supp. 991, 996 (E.D.Pa.1978); *Safeguard Mutual Insurance Co. v. Williams*, 463 Pa. 567, 574, 345 A.2d 664 (1975). If these factors are found to exist, then the court must determine whether the ultimate and controlling issues have been decided in a prior proceeding in which the present

---

7. 53 P.S. § 46191, pertaining to appeals from dismissals or removals, reads in pertinent part, "Upon such appeal being taken and docketed, the Court of Common Pleas shall fix a day for a hearing and shall proceed to hear the appeal on the original record and such additional proof or testimony as the parties concerned may desire to offer in evidence." However, this "right" to supplement the record appears to be limited by what the court deems relevant. *See Borough of Bristol v. Downs*, 48 Pa.Cmwlth. 46, 409 A.2d 467, 469 (1979).

8. The Borough Code, 53 P.S. §§ 46121, 46171, provides for the establishment of civil service commissions in boroughs of the Commonwealth having more than three (3) salaried policemen. The primary responsibility and discretion for discipline of police officers, however, rests with the borough council. The civil service commission's scope of review of disciplinary decisions is limited to whether the council abused its discretion.

parties had an opportunity to appear and assert their rights. *Holt Hauling & Warehousing, supra.*

■ Here, the state court proceeding involved the questions of whether (1) there was clear and convincing evidence warranting the Board's discharge of plaintiff, (2) whether plaintiff was denied the constitutional requirement of due process in the administrative proceeding by reason of the commingled functions of the Board or actual bias of its members and (3) whether, as of right, he was entitled to supplement the record on appeal to the Court of Common Pleas. Only the Warminster Township Board of Supervisors was named as a defendant and plaintiff had no alternative but to appeal the dismissal within the strictures of the Police Tenure Act. 53 P.S. § 815.

Although Section 8 of the Local Agency Law, 53 P.S. § 11308 [9] does provide for a review of claims of constitutional denials, *In Re Gettler*, 42 Pa.Cmwlth. 415, 400 A.2d 1339 (1979), there is no provision for the making of a claim for damages for any violations of constitutional or statutory rights. While the state reviewing court has the power to reinstate a successful appellant with back pay, benefits and emoluments of office, its review of the record

evidence or the supplemented record is directed entirely to affirming or modifying the decision of the local agency. 400 A.2d at 1341. Here, plaintiff seeks damages for wrongful dismissal and violation of constitutional rights. The Pennsylvania statute accorded judicial review of the administrative proceedings but plaintiff could not seek damages before either the Board of Supervisors or in the state courts on appeal from the adverse decision. Accordingly, this court holds that there is no identity of the causes of action in the state court and federal court proceedings, and that the doctrine of *res judicata* does not apply. *See Riverside Memorial Mausoleum, Inc. v. UMET Trust*, 581 F.2d 62, 68 (3d Cir. 1978).[10]

## III. COLLATERAL ESTOPPEL

The doctrine of collateral estoppel applies:

"where the second action between the same parties is upon a different cause or demand. . . . In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but 'only as to those matters in issue or points controverted, upon the determination of

9. Local Agency Law, Ch. 30A, 53 P.S. § 11308 (repealed Apr. 28, 1978, 42 P.S. § 20002 [1429] substantially reenacted 2 Pa.C.S.Ann. § 754 *et seq.* (1980)):

"(a) In the event a full and complete record of the proceedings before the local agency was not made, the court may hear the appeal de novo, or may remand the proceedings to local agency for the purpose of making a full and complete record or for further disposition in accordance with the order of the court.

"(b) In the event a full and complete record of the proceedings before the local agency was made, the court to which the appeal is taken shall hear the appeal without a jury on the record certified by the local agency. After hearing, the court shall affirm the adjudication unless it shall find that the same is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of this act have been violated in the proceeding before the agency, or that any finding of fact made by the local agency and necessary to support its adjudication is not supported by substantial evidence.

If the adjudication is not affirmed, the court may set it aside or modify it, in whole, or in part, or may remand the proceeding to the local agency for further disposition in accordance with the order of the court."

10. In *Riverside* the court held that an adverse decision against a borrower in a proceeding to open a confessed judgment obtained by a broker was not *res judicata* to a later action by the borrower against the broker for malicious interference with his business. The later action was a tort claim, a separate cause of action, and was not a defense to the note. Therefore, it could not have been asserted as a counterclaim in the prior proceeding. Similarly, in *Cubas v. Rapid American Corp., Inc.*, 420 F.Supp. 663, 669, fn. 10 (E.D.Pa.1976) the district court held in an employment discrimination action that prior adverse administrative decisions were not *res judicata* of claims of a former employee against his former employer and union pertaining to alleged collusive discharge and breach of collective bargaining agreements.

which the finding or verdict was rendered.' ... Since the cause of action involved in the second proceeding is not swallowed by the judgment in the prior suit, the parties are free to litigate points which were not at issue in the first proceeding, even though such points might have been tendered and decided at that time. But matters which were actually litigated and determined in the first proceeding cannot later be relitigated."

*Sea Land Services v. Gaudet, supra,* 414 U.S. at 593, 94 S.Ct. at 819 (citations omitted). *Accord, Montana v. U. S.,* 440 U.S. 147, 153, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979) ("Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to prior litigation.")

■ Thus, collateral estoppel is a broader concept than *res judicata.* It requires only the same issue of fact and the same party, or privy, against whom the defense is invoked. The cause of action need not be the same nor need the parties have a balance of identity. *Holt Hauling & Warehousing v. Rapistan, supra,* 448 F.Supp. at 996, fn. 12. The doctrine of collateral estoppel precludes the relitigation of *issues actually decided* in former judicial proceedings. In assessing its application to any issue there are four requirements that must be satisfied:

 (a) the issue decided in the prior adjudication must be identical with the one presented in the later action;

 (b) there must have been a final judgment on the merits;

 (c) the party against whom the plea is asserted must have been a party or in privity with a party to the prior adjudication; and

 (d) the party against whom it is asserted must have had a full and fair opportunity to litigate the issue in question in the prior action.

*See, Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–974, 59 L.Ed.2d 210 (1979); *Blonder-Tongue v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Public Service Mutual Insurance Co. v. Cohen,* 616 F.2d 704, 707 (3d Cir. 1980). The doctrine of mutuality has been abolished for federal court suits, *Allen v. McCurry, supra,* —— U.S. at ——, 101 S.Ct. at 416 and under Pennsylvania law, *see, In re Estate of Ellis,* 460 Pa. 281, 286–87, 333 A.2d 728 (1975).

## A. *The Parties Are Identical Or In Privy*

The Supervisors and Holter were acting at all times as agents of the Township and were, therefore, in privy with the Township defendant in the state court proceedings as to all matters related to and affecting plaintiff. While Yeager is alleged as a defendant in the federal complaint it is only as to a § 1985 conspiracy claim. A conspiracy claim was neither advanced nor labeled as such in the state court proceeding. However, plaintiff did raise and litigate the issues of alleged actual bias by the Supervisors, as well as all aspects of due process, including the propriety of the conduct of the investigation initiated by Holter. Whether Holter participated in the ultimate decision-making process was an issue also raised and decided. (Commonwealth Court Op. pp. 2–3).

The conspiracy allegations found in paragraph 8 of the federal complaint consist of the following: (1) the four defendant Supervisors attempted to force plaintiff to drop his demand to join the police department's collective bargaining unit; (2) the Board considered abolishing the position of chief of police, obtained a legal opinion on the subject but did not abolish the position; (3) on September 8, 1976 Holter delayed the suspension of Yeager who had complained to him about plaintiff; (4) an investigation was commenced by Holter based on Yeager's complaints; (5) based upon information obtained through the investigation, Holter, in the presence of defendant Supervisor Warren, told plaintiff the investigation revealed serious charges which could be aired in public and gave him the option of resigning or facing a formal request for his dismissal at the next public meeting; (6) Holter refused to tell plaintiff the charges be-

ing made against him at that time; (7) plaintiff refused to resign and Holter followed through on his recommendation of dismissal to the Board of Supervisors, on September 27, 1976 at which time he was apprised of the charges; (8) defendant Supervisor McKay was present when a witness against plaintiff gave an oral statement to Holter during the investigation of charges; (9) prior to October 6, 1976, after plaintiff demanded a public hearing, Holter sent a letter to all employees of the police department advising of the dismissal action taken by the Board, the necessity to give "correct answers" during his investigation and offering to give immunity from discipline or prosecution as the result of information supplied in the investigation, all with the purpose "to pressure prospective witnesses to give false testimony"; (10) the Supervisors denied plaintiff copies of several written witness statements at the public hearing; (11) the Supervisors refused to give him prehearing notice and discovery procedures generally accorded criminal defendants; and (12) the Supervisors refused to answer questions under oath concerning bias, interest or prejudice against plaintiff. (Complaint ¶ 8).

The only conspiracy allegation involving Yeager is that he agreed with the other defendants that the police department employees should be sent the letter discussing plaintiff's dismissal. *Id.* (¶ 8t) It is not alleged that Yeager drafted or mailed the letter. Rather, it is alleged that Holter sent the letter in his official capacity as Township Manager.

Despite plaintiff's allegation that the purpose or effect of the letter was to pressure policemen or other employees into giving false testimony, no allegation exists in the complaint that witnesses who appeared against him actually gave false testimony, or were pressured to testify by the letter or by any improper action of Yeager, or the other defendants. That Yeager merely complained to Holter about his suspension or that he felt wronged by plaintiff is immaterial to a federal conspiracy theory. Yeager had the protected right to complain. 53 P.S. § 815. Moreover, the letter by Holter, which is incorporated into the complaint by reference, does not, on its face, ask prospective witnesses to do anything other than to give correct or truthful answers under oath.[11] The letter must be viewed in the context of plaintiff's admitted conduct of promulgating a policy within the police department that all police business, including his orders and directives, were to be kept confidential and secret from non-members of the department on pain of discipline. Yeager had been accused by plaintiff of breaching that policy and had been summarily suspended.

Merely adding parties does not preclude the scrutiny of the court as to whether plaintiff is collaterally estopped. "Identity of parties is not a mere matter of form, but of substance. Parties nominally the same may be, in legal effect, different ... and parties nominally different may be, in legal effect, the same." *Chicago, R.I. & P. Ry. Co. v. Schendel,* 270 U.S. 611, 620, 46 S.Ct. 420, 424, 70 L.Ed. 757 (1926) (citations omitted). Here, viewing the allegations in the light most favorable to plaintiff, Yeager is alleged to have been an agent of the Township in the conduct of the investigation of plaintiff. As such, Yeager, like Holter, was

---

11. The text of the letter as alleged in paragraph 8(t) of the complaint, without plaintiff's emphasis is as follows:

As you know, the Chief of Police has been dismissed. In addition to the specific charges already filed against him, there have been numerous reports concerning improper or illegal behavior on his part. As a result of the facts, I, the Township Manager, have been asked to conduct a full inquiry into this matter.

In order to conduct a full investigation, each police officer and civilian employee ...

is required to answer questions concerning the conduct of Rowan P. Kelly ... Each officer and employee who is interviewed is granted full immunity from discipline or from prosecution as a result of information supplied in this inquiry. Any officer who fails to cooperate with investigation or who is suspected of providing incorrect answers to questions may be subject to disciplinary action. Your testimony is being recorded and will be transcribed. You will be asked to sign the transcription of your testimony.

in privy with the Board and the Township. Accordingly, the court finds that the defendants to this action were in privity with the Township, a party (defendant) to the state court action.

### B. *The Issues Material to Defendants Are Identical*

■ The allegation of conspiracy in a later action based upon the same material facts as were present in a prior action does not suffice to defeat the estoppel doctrine. *See, Williamson v. Columbia Gas & Light Corp.*, 186 F.2d 464, 467–68 (3d Cir. 1950) *cert. denied*, 341 U.S. 921, 71 S.Ct. 743, 95 L.Ed. 1355 (1951). *Cf. Riverside Memorial Mausoleum v. UMET, supra*, 581 F.2d at 67 (alleging conspiracy with respect to claims adjudicated in state court was held insufficient to defeat application of *res judicata*).

■ Moreover, the fact that an issue arises in a slightly different context in the second action does not necessarily mean that collateral estoppel is inapplicable. *Public Service Mutual Insurance Co. v. Cohen, supra*, 616 F.2d at 708. Plaintiff's factual allegations in the federal action amount to no more than that his services were terminated by the Board after an investigation report by the Township Manager and that the Board reaffirmed the action after an appeal hearing. The claim that the individual defendants, who were all known actors in the administrative proceeding, are conspirators neither succeeds in creating different parties nor in creating different issues.[12]

Plaintiff has not alleged any new facts to support his section 1983 or 1985 claims that defendants engaged in impermissible actions violative of due process. It is not alleged that the Board violated any law or regulation when it sought and received a legal opinion on abolishing the position of Chief of Police, or when it demanded that the plaintiff drop his request to be a member of the bargaining unit which he supervised, or when Holter conducted an investigation affording plaintiff the opportunity to resign.

The Board of Supervisors is responsible for the conduct of the police department. These matters seem legitimately within the operational or administrative duties of the Board. More importantly, these were all factual issues specifically addressed and decided by the Court of Common Pleas. After scrutinizing the trial record, that Court found there was no evidence of bias in the conduct of the hearing by the Board within the concerns of *Withrow v. Larkin*, 421 U.S. 35, 46, 55, 58, 95 S.Ct. 1456, 1463, 1468, 1470, 43 L.Ed.2d 712 (1975).[13] (Common Pleas Opinion, p. 13).

The Court of Common Pleas, the Commonwealth Court, in affirming, and the Pennsylvania Supreme Court in denying *allocatur*, have found that by a clear and convincing evidence standard (1) plaintiff had a full and fair opportunity to present evidence at the hearing and his decision not to do so was made with the assistance of two able counsel for reasons of strategy, *i. e.*, he believed he could wait to present all his evidence to the Court of Common Pleas. (Common Pleas Opinion, p. 2); (2) the Board meticulously protected plaintiff's procedural and substantive rights at the hearing (*Id.* 12); (3) the Board made itself available to answer questions under oath as to any actual bias and plaintiff chose not to take full advantage of the offer (*Id.*); (4) there was no competent evidence that any

---

12. The equal protection of the laws issue discussed *infra*, is not material to the named defendants because the Pennsylvania Legislature and not the Township prescribes the applicable judicial review procedures for administrative hearings. Even assuming that the acts of the defendants involved the Equal Protection Clause, taking the allegations of plaintiff as true, plaintiff has not stated an Equal Protection claim upon which relief may be granted.

13. The combination of investigative and adjudicative functions does not, without more, constitute a due process violation as creating an unconstitutional risk of bias. (*Id.* at 58, 95 S.Ct. at 1470). "It is ... very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints ... and then to participate in the ensuing hearings. This mode of procedure does not violate ... due process of law." (*Id.* at 56, 95 S.Ct. at 1469).

predisposition, bias or prejudice existed on the part of any Board member which denied plaintiff a fair hearing (*Id.*); (5) the charges brought were not originally preferred by the Board but were merely presented by the Board upon information received from the Township Manager; (6) there was no bias in the conduct of the hearing (*Id.* 13), *See, Withrow v. Larkin, supra; cf. In Re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955); (7) because it was a civil proceeding plaintiff was not entitled to discovery of witnesses' written statements obtained by the Township Manager in preparation for the hearing nor was he entitled to a bill of particulars as a defendant may be in a criminal case (*Id.* 14); (8) the Board of Supervisors was justified in summary dismissal action, instead of suspension pending a hearing, because under the Police Duty Manual some of the charges called for immediate dismissal without prior suspension pending adjudication and, in any event, the hearing demonstrated the dismissal action was well founded (*Id.* 12); (9) the commingled function of the Board in this instance was consistent with federal constitutional requirements of due process; (10) the fact that one of the supervisors sat in on some of the questioning of witnesses during the investigation was not violative of plaintiff's due process rights; (*Id.* 6); (11) denial of his request to sit as Chief of Police on the negotiating team of police officers during contract negotiations was not evidence of bias (*Id.* 6, *Cf.* complaint ¶ 8(a–c); (12) one of the Supervisors circulated a letter discussing the budget that had been drafted by plaintiff but that was not evidence of bias (*Id., cf.* complaint ¶ 9(a)); [14] (13) plaintiff was not entitled to a *de novo* hearing as a matter of right; and (14) the Police Tenure Act was constitutional, meeting the requirements of due process and fundamental fairness.

The state courts affirmed conclusively that the evidence demonstrated a pattern of conduct by plaintiff unbecoming a police officer, that such acts would have a tendency to destroy public respect for police officers, and would undermine the confidence in the police department. (Common Pleas Opinion at 17.) *See, Faust v. Police Civil Service Commission of Borough of State College*, 22 Pa.Cmwlth. 123, 347 A.2d 765 (1975); *Fabio v. Civil Service Commission of the City of Philadelphia*, 30 Pa.Cmwlth. 203, 373 A.2d 751 (1977).

Plaintiff has not raised a single new issue. He has not alleged that either defendant has done anything beyond the scope of his office or position.

 The federal action amounts to no more than a rephrasing of the challenge made in the first action that there was a denial of due process because the body which fired him was administratively investigator, prosecutor and judge. This issue was litigated to final judgment in the state court, and now is precluded by collateral estoppel. It is of no assistance to plaintiff that he now uses the word "conspiracy" to describe the investigatory process which involved the Township Manager, the suspended police lieutenant and the four members of the Board. The Court of Common Pleas considered plaintiff's request to supplement the record and denied it on the basis that the record evidence was replete with clear and convincing evidence that plaintiff was properly discharged because of misconduct.

"[M]erely adding some facts, naming additional defendants or proposing a different theory of recovery does not convert one cause of action into a second cause of action if both actions involve the same liability creating conduct on the part of the defendants and the same alleged violation of the plaintiff's rights."

*Coggins v. Carpenter*, 468 F.Supp. 270, 280 (E.D.Pa.1979) (considering the application of *res judicata*); *see also, Sims v. Mack Trucks, Inc.*, 463 F.Supp. 1068 (E.D.Pa. 1979). For these reasons, the court holds that as to each legal theory raised in the

---

**14.** There is nothing in ¶ 8 of the complaint which states or suggests that it was legal for the Police Chief to be a member of the bargaining unit whose members he supervised and disciplined or in ¶ 9 that the criticisms of his budget were not fair and factual. The Court of Common Pleas fully considered these contentions and found no evidence of actual bias.

instant complaint, except equal protection, each of the requisites for application of collateral estoppel has been satisfied. Plaintiff's action is barred by collateral estoppel except as to the equal protection claim.

## IV. THE EQUAL PROTECTION CLAIM IS FRIVOLOUS

Plaintiff advances two arguments. Allegedly under the Borough Code policemen are subject to discipline and may demand a hearing before a civil service commission as opposed to a commingled function body such as a board of supervisors in a township of the second class.[15] It is also alleged that borough policemen have the right to supplement the record on appeal to the Court of Common Pleas.

First, it should be noted that under the Borough Code the control of the police force is in the hands of the township council and although there is a civil service review system, the scope of that administrative review is very limited. *Borough of Bristol v. Downs, supra.* Further, while Section 509(a)(174) of the Borough Code, 53 P.S. § 46191, does read, in part, "the court . . . shall proceed to hear the appeal on the original record and such additional proof or testimony as the parties may desire to read into evidence," it does not appear to have been judicially interpreted as a mandatory obligation upon the reviewing court to allow such evidence. Rather, receipt of additional evidence is committed to its sound discretion, that judgment being guided by the nature of the charges and the extent of the record before the civil service commission. *Borough of Bristol, supra,* (although the Court of Common Pleas may consider additional evidence on appeal, such evidence must at least be related to issues raised below).

However, even assuming the correctness of plaintiff's interpretation of the relevant state statutes, the equal protection argument still fails. Plaintiff has not alleged that there is any invidiously discriminatory state purpose in any difference between the review system for borough policemen and township policemen, that he is a member of a suspect classification, such as race or sex, or that he is the victim of disparate treatment as the result of an arbitrary or irrational act by the Commonwealth. *U. S. Railroad Retirement Board v. Fritz,* —— U.S. ——, —— – ——, 101 S.Ct. 453, 457– 460, 66 L.Ed.2d 368 (1980); *Jamieson v. Robinson,* 641 F.2d 138 at 143 (3d Cir. 1981). He has not, and cannot, allege that as a matter of law, commingled function review bodies are inherently biased and incapable of protecting constitutional rights. *See, Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). Therefore, we are left with plaintiff's contention precisely as he has pleaded it: simply because policemen of second class townships do not come under a civil service commission system or a judicial review system identical to that of borough policemen, there is a denial of equal protection (Complaint ¶¶ 17, 18).

Almost forty years ago the Pennsylvania Supreme Court considered and passed on a like argument in the context of a challenge by small boroughs and townships, not covered by civil service, to the constitutionality of the Police Civil Service Act of 1941. The township and borough plaintiffs claimed the Act was special legislation. This Act, the predecessor of Borough Code, 53 P.S. § 46171, was held to be a law of general application. It provides for the appointment of a police civil service commission to adopt rules and regulations for the appointment, promotion and reduction in rank, suspension and removal of paid members of the police force in boroughs, incorporated towns and first class townships having three or more paid officers. Act of June 5, 1941, P.L. 84. *Haverford Township v. Siegle,* 346 Pa. 1, 28 A.2d 786 (1942); *Bragdon v. Ries,* 346 Pa. 10, 29 A.2d 40 (1942). The court pointed out that the Act comes into

---

15. Warminster Township is a township of the second class. The Police Tenure Act applies, not only to townships of the second class, but also to boroughs and townships of the first class having a police force of less than three members and not otherwise covered by the Borough Code. 53 P.S. § 811.

play only when a township acquires a sufficient police organization to warrant its application. The court stated,

"These cases make it clear that the legislature has the right, in regulating a particular class to exclude certain members of the class to whom the Act can have no useful application. A township having one or two or no police officers would be justified in objecting strenuously to the expense and inconvenience of maintaining a complete system of police civil service which would have no function to perform. This exception in the legislation does not constitute a classification of boroughs, towns and first class townships. The Act is general in both purpose and scope. The exception is reasonable and necessary, and is based on considerations as plain as they are sound.

\* \* \* \* \* \*

Finally, it is argued that the Act violates the twenty-sixth clause of section 7, Article III, prohibiting local or special laws granting to any corporation or individual any special privilege or immunity. It is said that the statute grants privileges to members of the police force in first class townships having a police force of more than three members, and denies them to policemen in other such townships. The obvious answer is that such differences always happen whenever legislation regulating municipal affairs is made effective in certain municipalities and not in others. If such an argument were sound, civil service could never have been inaugurated unless it were done in every city, town, borough and township in the Commonwealth at the same time. The patent unreasonableness of such a suggestion destroys it.

All of which leads to the conclusion that the Police Civil Service Act of 1941, P.L. 84, is constitutional, and we so declare it.

*Haverford Township v. Siegle*, 346 Pa. at 5, 9, 28 A.2d 786.

Equal protection is not necessarily violated where reasonably based statutory classifications result in inequality. *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Nor does the Equal Protection clause require a state to duplicate in all administrative proceedings the methods of providing full and fair review. However, it does require that the person affected by the state process be given an adequate opportunity to present his claims in the context of the review procedure. *Ross v. Moffitt*, 417 U.S. 600, 616, 94 S.Ct. 2437, 2446, 41 L.Ed.2d 341 (1974). Exact equality is not always a prerequisite of Fourteenth Amendment equal protection. *Norvell v. Illinois*, 373 U.S. 420, 423, 83 S.Ct. 1366, 1368, 10 L.Ed.2d 456 (1962). A state may treat different legislatively created classes of individuals differently if there is a rational relationship to the statute's objectives. *Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971). Thus, as the Court stated in *Metropolis Theatre Co. v. Chicago*, 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730 (1913):

"The problems of government are practical ones and may justify, if they do not require rough accommodations—illogical, it may be, and unscientific ... What is best is not always discernible; the wisdom of any advice may be disputed or condemned."

The legislative history of the Police Civil Service Act, judicially reviewed, is clear: Pennsylvania has a rational reason for the reach of the civil service system. Rough accommodations made by government do not violate the Equal Protection Clause unless the lines drawn are invidious and purposeful. *Norvell v. Illinois*, 373 U.S. at 424, 83 S.Ct. at 1368; *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). *See also, U. S. Railroad Retirement Board v. Fritz, supra.* The Equal Protection Clause does not guarantee exact treatment. It does guarantee that persons similarly situated are to be *similarly* treated. *Vandermark v. Housing Authority of City of York*, 492 F.Supp. 359, 363 (M.D.Pa.1980). Different treatment of persons similarly situated may be justified if such treatment is reasonably related to a legitimate government interest, and is not based upon invidi-

ous discrimination or a suspect classification. *Delaware River Basin Commission v. Bucks County Water & Sewer Authority*, 641 F.2d 1087 at 1092–1093 (3d Cir. 1981).

■ The Equal Protection Clause does not require that every Pennsylvania municipal policeman have identical review procedures, regardless of the circumstances.

This court is convinced that the hearing procedures imposed by the state upon the civil service commissions for borough policemen and upon townships of the second class comply as to township policemen with the requirements of constitutional due process.[16] *See Withrow v. Larkin, supra.* On the existing record, it is apparent that plaintiff was accorded a due process hearing substantially the same as that accorded to a borough policeman.

Therefore, taking all of plaintiff's allegations of fact as true, he has, nevertheless, failed to state an equal protection claim upon which relief can be granted.

## V. CONCLUSION

Accordingly, for the reasons stated above, plaintiff's complaint is dismissed with prejudice.

---

**16.** "The fundamental requisite of due process of law is the opportunity to be heard. *Grannis v. Ordean*, 234 U.S. 385, 394 [34 S.Ct. 779, 783, 58 L.Ed. 1363] (1914). The hearing must be 'at a meaningful time and in a meaningful manner.' *Armstrong v. Manzo*, 380 U.S. 545, 552 [85 S.Ct. 1187, 1191, 14 L.Ed.2d 62] (1965)." *Goldberg v. Kelly*, 397 U.S. 254, 267, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970); *In re Application of U.S.A.*, 610 F.2d 1148, 1156–1157 (3d Cir. 1979). In this case plaintiff had notice, a hearing, the right to present evidence and challenge evidence presented against him, and the right to counsel. Further, on appeal he had the opportunity to supplement the record to the extent that the Warminster Supervisors precluded him from presenting relevant evidence or denied him access to such evidence. Plaintiff failed to show that the supervisors precluded his presentation of or denied him access to relevant evidence. Finally, plaintiff was given the reasons for his discharge. *See* p. 661, n.6, *supra*, outlining the many instances of plaintiff's alleged misconduct.