Mark C. BARLAU, Plaintiff,

v.

CITY OF NORTHFIELD, Peter Stolley and Mancel Mitchell, Defendants.

Lori HAYNE, Plaintiff,

v.

CITY OF NORTHFIELD, Peter Stolley and Mancel Mitchell, Defendants.

Nos. 3–82 Civ. 1588, 3–82 Civ. 1589.

United States District Court,
D. Minnesota,
Third Division.

June 22, 1983.

Tuveson, Goldman & Nelson by Bob Goldman, and Robert Tuveson, Albert Lea, Minn., for plaintiffs.

Popham, Haik, Schnobrich, Kaufman & Doty, Ltd. by Clifford M. Greene, and Thomas J. Radio, Minneapolis, Minn., for defendants.

## MEMORANDUM ORDER

ALSOP, District Judge.

These matters come before the court upon defendants' motion for summary judgment in each of the above-entitled cases. This memorandum order shall constitute the court's findings of fact and conclusions of law regarding defendants' motions.

### FACTS

Plaintiffs Mark Barlau and Lori Hayne have been officers of the Northfield Police Department since November, 1977 and December, 1980, respectively. Defendant Mancel T. Mitchell is Chief of Police and defendant Peter S. Stolley is City Administrator for the City of Northfield, Minnesota. This action, brought pursuant to 42 U.S.C. § 1983, arises out of disciplinary actions initiated by defendant Mitchell against plaintiffs Barlau and Hayne.

On or about July 6, 1982, Officers Hayne and Barlau were informed by Police Chief Mitchell that an investigation of their conduct was underway that might result in future disciplinary action. Chief Mitchell conducted his investigation during the summer of 1982. He concluded his investigation and by letter dated September 10, 1982, informed Officer Hayne that she was suspended from duty for fifteen (15) days without pay. In the letter, Mitchell charged Officer Hayne with misconduct, improper use of city equipment and neglect of duty. By letter of the same date, Officer Barlau was suspended from duty for fifteen (15) days without pay by Chief Mitchell. In

that letter, Mitchell charged Officer Barlau with insubordination, misconduct, improper use of city equipment and neglect of duty. Each of the letters stated that the Police Chief would recommend that the officer be dismissed from the Northfield Police Department at a hearing to be held before the Northfield Police Civil Service Commission (NPCSC).

Prior to any hearing before the NPCSC, Chief Mitchell compiled a report of his investigation and submitted copies of the report to plaintiffs, their union representative, and each of the three members of the NPCSC. Chief Mitchell also made available to plaintiffs before the hearing transcripts of interviews conducted by the Chief which were not included in his report. In addition, plaintiffs allege that prior to the hearing Chief Mitchell discussed Barlau's and Hayne's cases individually with members of the NPCSC.

On September 28, 1982, plaintiffs, through their union representative wrote to the Northfield City Attorney and the Chairman of the NPCSC, stating that they did not intend to participate in a hearing on the merits before the civil service commission. Plaintiffs took this position because of their concern that "individual members of the Commission may have discussed the matter with the Chief of Police."

Plaintiffs and their union representative, Lowell Lynch, appeared at the NPCSC hearing on the following day, but refused to participate for the reasons set forth in their letter. In particular, plaintiffs challenged the jurisdiction of the Commission. NPCSC counsel, who had been engaged in anticipation of the hearings and who was unaffiliated with the Northfield City Attorney, informed plaintiffs and Mr. Lynch that the hearing would proceed in accordance with state law, and that they would be afforded full rights of cross-examination. Plaintiffs and Lynch left the hearing before testimony was taken and did not participate in the proceedings thereafter.

The NPCSC proceeded with the hearing after plaintiffs' departure. Sworn testimony of witnesses was taken, the Commission-

ers asked questions, and a verbatim transcript of the hearing was made by a court reporter. On October 4, 1982, the NPCSC issued its "Findings, Decision and Order" for each plaintiff. The NPCSC followed the Chief's recommendation and ordered that Barlau be discharged from the police force. The Chief's recommendation as to Hayne was not followed but the NPCSC did order that she be suspended for a total of 45 days.

Under the collective bargaining agreement, plaintiffs had a choice between appealing the NPCSC's decision pursuant to Minn.Stat. § 419.12 or going to arbitration under the agreement's grievance procedure. The collective bargaining agreement specifically provides that no employee will be permitted to seek a remedy under the appropriate Civil Service procedure and the grievance procedure for the same grievance. Thus, plaintiffs were correct when they insisted before and after the NPCSC hearing that they were entitled to arbitrate any discipline imposed. In fact, the City acknowledged prior to the hearing that plaintiffs' right to arbitration under the collective bargaining agreement would not be impaired by their participation at the NPCSC hearing.

Plaintiffs exercised their option to proceed to arbitration through the grievance procedure provided for in the collective bargaining agreement. Pursuant to that agreement, a "Step 3" grievance hearing was held for each plaintiff on October 12, 1982, before defendant Peter Stolley, the City Administrator. This hearing is a condition precedent to arbitration under the collective bargaining agreement. All parties were represented by counsel at the hearing. Plaintiffs declined to offer information or testimony to rebut the charges against them, although they were given an opportunity to do so. Defendant Stolley denied the grievance.

On December 21 and 22, 1982, arbitration of charges against Mark Barlau was conducted before an independent arbitrator. After a full hearing on the merits, the arbitrator determined that Barlau was

guilty of misconduct, neglect of duty and misuse of city equipment; however, he found the charge of insubordination to be unsubstantiated. Based thereon, the arbitrator ordered that the City's discharge of Barlau was without just cause, and that Barlau should receive a 45-day suspension as did Hayne. That decision came before Minnesota District Court Judge Urban Steimann on a motion to vacate filed by the City and a motion to confirm filed by Barlau. Judge Steimann affirmed the arbitrator's decision on April 29, 1983.

On January 25 and 26, 1983, arbitration of charges against Lori Hayne was conducted before an independent arbitrator other that the arbitrator who heard Barlau's grievance. After a full hearing on the merits, the arbitrator ordered that the City's 45-day suspension be changed to a written reprimand. The arbitrator also ordered the City to draft a set of guidelines for the use of police squad cars by on-duty and off-duty personnel. This court is not aware of any challenge to the arbitrator's decision in the Hayne grievance.

In addition, plaintiff Barlau filed an unemployment claim with the Minnesota Department of Economic Security. That claim was initially denied on the grounds that Barlau's misconduct disqualified him from benefits under the relevant state statute. Barlau appealed the initial denial of the unemployment claim and received a hearing before State Hearing Examiner Leo Andree at which Barlau testified. The Hearing Examiner affirmed the denial of unemployment benefits. On May 4, 1983, the Commissioner of the Department of Economic Security affirmed the finding that Barlau was disqualified from receiving unemployment benefits because he had been properly discharged for misconduct and amended the decision to correct certain technical errors.

On November 10, 1982, plaintiffs Mark Barlau and Lori Hayne filed these federal lawsuits. Both Complaints are essentially the same. They allege that:

1. Defendant Mitchell violated plaintiffs' due process rights by his actions in investigating and presenting charges to the NPCSC regarding alleged misconduct. Complaints ¶ 22 and ¶ 23.

2. Defendant Mitchell willfully violated plaintiffs' rights under the Minnesota Government Data Practices Act, Minn. Stat. § 13.01 *et seq.* Complaints ¶ 24.

3. Defendants Stolley and City of Northfield violated plaintiffs' rights under the Minnesota Government Data Practices Act, Minn.Stat. § 13.01 *et seq.* Complaints ¶ 25 and ¶ 27.

4. Defendants Stolley and City of Northfield violated plaintiffs' due process rights by knowingly permitting defendant Mitchell to proceed as he did. Complaints ¶ 26.

5. Defendants Stolley and City of Northfield violated plaintiffs' due process rights by providing false and misleading information to the Minnesota State Unemployment Insurance Division. Complaints ¶ 28.

## DISCUSSION

### I.

Plaintiffs alleged in their memoranda and at oral argument that defendant Mitchell violated their procedural due process rights by engaging in ex parte communications with individual members of the NPCSC prior to the NPCSC hearing.[1] This is the only act or omission of defendant Mitchell asserted by plaintiffs in their Complaint, written memoranda or at oral argument that could arguably be construed as a due process violation. Defendants dispute the nature and extent of any communications between defendant Mitchell and the NPCSC members, but for purposes of this motion, the court will assume that defendant Mitchell engaged in such ex parte communications regarding the charges pending

1. At oral argument, plaintiffs' counsel stated that plaintiffs' Complaints do not allege sub-

stantive due process violations.

against plaintiffs. Even assuming these communications took place, the court is of a view that such action did not deprive plaintiffs of their right to procedural due process.

The Chief of Police is commissioned to file charges of inefficiency or misconduct regarding police officers with the local Civil Service Commission. Minn.Stat. § 419.11 (1982). In Northfield, only the Police Civil Service Commission is authorized to discharge police officers or suspend police officers for more than fifteen (15) days. Minn. Stat. §§ 419.05, .07 (1982); City of Northfield Police Civil Service Rules and Regulations, §§ 14, 16 (July 21, 1977). In this case, the parties do not dispute that plaintiffs had a statutory right to a hearing before the NPCSC prior to being discharged.

> No newly appointed peace officer after satisfactory completion of the basic peace officer's training course pursuant to sections 626.843 to 626.852 and after a period of no longer than 12 months continuous employment thereafter, shall be removed or discharged except for cause upon written charges and after an opportunity to be heard in his own defense as in this chapter hereinafter provided. Such charges shall be investigated by or before such civil service commission. The finding and decision of such commission shall be forthwith certified to the chief or other appointed or superior officer, and will be forthwith enforced by such officer.

Minn.Stat. § 419.07 (1982); see Minn.Stat. § 419.075, Subd. 2 (1982); City of Northfield Civil Service Rules and Regulations, § 14 (July 21, 1977).

Specifically, charges of inefficiency or misconduct must be tried in a hearing open to the public with each commissioner empowered to issue subpoenas and to administer oaths and to compel the attendance and testimony of witnesses and the production of relevant papers. Minn.Stat. § 419.11 (1982). In addition, in this case Officers Barlau and Hayne were afforded the right to a prehearing review of the evidence which supported the charges against them, the right to representation by counsel at the hearings, the opportunity to cross-examine adverse witnesses and the opportunity to rebut all adverse evidence. Thus, plaintiffs were clearly afforded a trial-like hearing prior to termination.

## A.

■ Even assuming that defendant Mitchell communicated with individual members of the NPCSC prior to plaintiffs' hearing, the court is of a view that plaintiffs' procedural due process rights were not violated. In order to be entitled to procedural due process, plaintiffs must demonstrate that they were deprived of a liberty or property interest by governmental action. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Plaintiffs have not claimed that a liberty interest was implicated by their termination and the court holds that there was none. *See Pollock v. Baxter Manor Nursing Home,* 706 F.2d 236 at 237 (8th Cir.1983) (per curiam); *Seal v. Pryor,* 670 F.2d 96, 99 (8th Cir.1982). It is clear that plaintiffs had a legitimate expectation of continued employment absent discharge for cause since they had served beyond their probationary period. Minn.Stat. § 419.07 (1982). Thus, plaintiffs had a property interest which is protected by procedural due process. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Wilson v. Robinson,* 668 F.2d 380, 382 (8th Cir.1981). However, since their property interest is created by statute, the scope of that interest is defined by the procedural limitations built into the statute creating it. *Arnett v. Kennedy,* 416 U.S. 134, 152, 94 S.Ct. 1633, 1643, 40 L.Ed.2d 15 (1974); *Kersey v. Shipley,* 673 F.2d 730, 732–33 (4th Cir.) (scope of property interest in continued employment with police department is defined by statute creating the interest), *cert. denied,* —— U.S. ——, 103 S.Ct. 80, 74 L.Ed.2d 77 (1982). *See Shawgo v. Spradlin,* 701 F.2d 470, 475 n. 4 (5th Cir.1983).

■ The scope of any property interest in continued employment in this case is defined by Minn.Stat. § 419.07 which pro-

vides that charges against a peace officer may be investigated by the local civil service commission. Any ex parte communications between Chief Mitchell and the NPCSC can be construed as a part of the investigation by the NPCSC. This investigatory function of the NPCSC is allowed by the statute and any guarantee against removal without cause as set forth in the statute is limited by the procedures which the state has designated for the determination of cause. Where "the grant of a substantive right is inextricably intertwined with the limitations on the procedures which are to be employed in determining that right, a litigant ... must take the bitter with the sweet." *Arnett,* 416 U.S. at 153–54, 94 S.Ct. at 1644. Therefore, plaintiffs were not deprived of any property interest which is protected by procedural due process.

### B.

■ Alternatively, even assuming that plaintiffs had a property interest which was not limited by the statute, they were not deprived of procedural due process because of the alleged ex parte communications in this case.[2] Essentially, procedural due process requires notice and an opportunity to be heard. *Goldberg v. Kelly,* 397 U.S. 254, 267, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970). Not all ex parte communications with the fact finder in an adversary proceeding violate these due process requirements. *See Simer v. Rios,* 661 F.2d 655, 680 (7th Cir. 1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982). The Court of Appeals for the Eighth Circuit has held that ex parte communications may result in a denial of procedural due process for the following reasons:

> It is fundamental to a full and fair review required by the due process clause that a litigant have an opportunity to be confronted with all adverse evidence and

to have the right to cross-examine available witnesses. Where a party is precluded from exercising this fundamental right, the review procedure is constitutionally defective and cannot be excused as harmless error.

*Nevels v. Hanlon,* 656 F.2d 372, 376 (8th Cir.1981) (citations omitted). In this case, the alleged ex parte communications occurred prior to the hearing before the NPCSC, and plaintiffs were aware of the existence of those communications. Plaintiffs had an opportunity to confront Chief Mitchell as well as members of the NPCSC at the hearing regarding any ex parte communications which may have taken place. Plaintiffs may not create a due process violation by choosing not to exercise their right to participate in the hearing. *Pinson v. Hendrix,* 493 F.Supp. 772, 778–9 (N.D. Miss.1980). *See Kelly v. Warminster Township Board of Supervisors,* 512 F.Supp. 658, 661 (E.D.Pa.1981).

In addition, in *Nevels,* where the Eighth Circuit found a due process violation because of ex parte communications, the ex parte communications took place after the hearing such that plaintiff had no opportunity to confront and cross-examine the individual providing the ex parte information. *See also Rinehart v. Brewer,* 561 F.2d 126, 132 (8th Cir.1977) (opposing party did not become aware of ex parte contacts in time to respond). Such is not the situation in this case. Plaintiffs Barlau and Hayne were well aware of the possibility that individual members of the NPCSC may have discussed their case with Chief Mitchell prior to the hearing, and they so stated in a letter to the Chairman of the NPCSC on September 28, 1982. However, rather than confronting the Chief and the Commissioners at the hearing, plaintiffs chose not to participate even though they had an opportunity to do so.

---

2. The issue before this court is distinct from that faced by courts dealing with the propriety of ex parte communications under the statutory provisions of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq. See Ryder v. United States,* 585 F.2d 482, 486, 218 Ct.Cl. 289

(1978); *Camero v. United States,* 375 F.2d 777, 780, 179 Ct.Cl. 520 (1967); *State of Georgia, Department of Human Resources v. Califano,* 446 F.Supp. 404, 408 (N.D.Ga.1977). Those cases are not controlling on the constitutional issues before this court.

Finally, there is nothing in the record to indicate that Chief Mitchell's communications with individual members of the NPCSC rendered the NPCSC incapable of fairly deciding the issues before it.

The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the Board members at a later adversary hearing. Without a showing to the contrary, state administrators "are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.

*Withrow v. Larkin,* 421 U.S. 35, 55, 95 S.Ct. 1456, 1468, 43 L.Ed.2d 712 (1975), quoting *United States v. Morgan,* 313 U.S. 409, 421, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941). "Mere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not . . . disqualify a decisionmaker." *Hortonville Joint School District v. Hortonville Education Association,* 426 U.S. 482, 493, 96 S.Ct. 2308, 2314, 49 L.Ed.2d 1 (1976). To the extent that plaintiffs are alleging bias as a result of ex parte communications, they must demonstrate a risk of actual bias in the NPCSC in order to prevail on a due process claim. *See Withrow,* 421 U.S. at 47, 58, 95 S.Ct. at 1464, 1470; *Nevels,* 656 F.2d at 376. This risk of bias will not be presumed, *see Bignall v. North Idaho College,* 538 F.2d 243, 247 (9th Cir.1976), and "must be based on more than mere speculation and tenuous inferences," *Duke v. North Texas State University,* 469 F.2d 829, 834 (5th Cir.), *cert. denied,* 412 U.S. 932, 93 S.Ct. 2760, 37 L.Ed.2d 160 (1973). Plaintiffs have not demonstrated any risk of actual bias in this case.

In light of the circumstances of this case, the court concludes that plaintiffs' due process rights were not violated because of ex parte communications with the NPCSC.

First, any ex parte communications came before the hearing and their existence was known to plaintiffs prior to the hearing. Second, there is no evidence that the NPCSC made up its mind prior to the hearing. Finally, plaintiffs had a full opportunity to participate in the decision-making process.

C.

Even if the ex parte communications caused the pretermination procedures afforded plaintiffs to be constitutionally inadequate, it does not follow that plaintiffs' due process rights were violated in this case. Up until this point in the discussion, this court has analyzed the constitutional issue only in terms of the adequacy of the hearing before the NPCSC. However, in this case plaintiffs were afforded post-disciplinary hearings in the form of arbitrations in addition to the pretermination hearing.

In determining whether the procedure in this case complied with due process, the court must balance three factors: (1) the nature of the individual interest at stake; (2) the risk of erroneous deprivation and the probable value of additional procedural safeguards; and (3) the nature of the governmental interest involved. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Although the Supreme Court has consistently held that, except in emergency situations, some form of hearing is required before an individual is finally deprived of a property interest, *Parratt v. Taylor,* 451 U.S. 527, 540, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981), "[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved *and the nature of the subsequent proceedings.*" *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (emphasis supplied).[3]

---

**3.** Among the basic requirements of a due process hearing are the following: (1) notice of charges; (2) disclosure of evidence supporting charges; (3) opportunity to confront and cross-examine adverse witnesses; (4) opportunity to testify and to present witnesses and evidence; (5) opportunity to be represented by counsel; (6) impartial decision maker; and (7) statement of reasons for decision. *Serafin v. City of Lexington, Nebraska,* 547 F.Supp. 1118, 1125 (D.Neb.1982). While all of these rights may be required in a criminal-type hearing or where

■ In this case, the subsequent proceedings included arbitrations by each plaintiff which lasted two days. During their arbitrations, plaintiffs, through their counsel, subpoenaed witnesses, cross-examined defendants' witnesses and presented opening statements and closing arguments to the independent arbitrators. These arbitrators were in no way bound by the decision of the NPCSC. This court is of a view that the proceedings afforded plaintiffs, taking into account both pretermination and post-disciplinary hearings, met the standards of fundamental fairness required by the due process clause.[4]

Based on the above discussion, the court holds that plaintiffs were not deprived of their procedural due process rights in this case. Thus defendants' motion for summary judgment will be granted as to plaintiffs' claims against defendants based on alleged violations of plaintiffs' due process rights resulting from the hearing before the NPCSC.

## II.

■ Plaintiffs also allege that defendants Stolley and the City of Northfield violated their right to due process by providing false and misleading information to the Minnesota State Unemployment Insurance Division. This claim states a cause of action in defamation, if anything, and claims sounding in defamation are not cognizable under 42 U.S.C. § 1983. *Paul v. Davis,* 424 U.S. 693, 701–02, 96 S.Ct. 1155, 1160–61, 47 L.Ed.2d 405 (1976); *Underwood v. Pritchard,* 638 F.2d 60, 62 (8th Cir.1981). This result cannot be avoided by attempting to frame the cause of action in terms of due process. Therefore, the court will grant defendants' motion for summary judgment as to plaintiffs' claims based on statements defendant Stolley allegedly made to the Minnesota State Unemployment Insurance Division.

## III.

Plaintiffs' only remaining claims against defendants are based on the Minnesota Government Data Practices Act, Minn.Stat. § 13.01 *et seq.* The court will not exercise pendent jurisdiction as regards any of these state law claims, and these claims will be dismissed without prejudice. *See Koke v. Stifel, Nicolaus & Co., Inc.,* 620 F.2d 1340, 1345–47 (8th Cir.1980).

Upon the foregoing,

IT IS ORDERED That defendants' motions for summary judgment are granted.

IT IS FURTHER ORDERED That the Clerk of Court enter judgment as follows:

IT IS ORDERED, ADJUDGED AND DECREED That, to the extent that plaintiffs' Complaints allege a cause of action under 42 U.S.C. § 1983 based on due process violations regarding the hear-

---

significant interests are at stake, fewer protections are generally required in termination of employment situations. *See Rosewitz v. Latting,* 689 F.2d 175, 177 (10th Cir.1982).

4. The Fifth Circuit has expressed this principle in terms of the post-termination hearing curing any constitutional inadequacies in the first hearing. *Thompson v. Bass,* 616 F.2d 1259, 1266 (5th Cir.1980), *cert. denied,* 449 U.S. 983, 101 S.Ct. 399, 66 L.Ed.2d 245 (1981); *Glenn v. Newman,* 614 F.2d 467, 472 (5th Cir.1980). However, a hearing after an unconstitutional termination cannot be a substitute for a pretermination hearing because by the time the aggrieved party has an opportunity to be heard he may already have been harmed. *See Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978); *Busche v. Burkee,* 649 F.2d 509, 519 (7th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).

Thus, this court prefers to take the position that a prompt post-termination hearing may lower the formality required of the initial hearing by due process. *See Mathews v. Eldridge,* 424 U.S. 319, 349, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976) (procedural due process not violated by failure to provide evidentiary hearing prior to termination of disability benefits where prescribed procedures provide a post-termination evidentiary hearing as well as subsequent judicial review of the decision to terminate). In this regard, the adequacy of the procedure afforded plaintiffs in this case can only be determined by considering both pretermination and post-disciplinary proceedings available under state law. *See Ellis v. Hamilton,* 669 F.2d 510, 515 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982); *Liotta v. Rent Guidelines Board,* 547 F.Supp. 800, 802 (S.D.N.Y.1982).

ings before the Northfield Police Civil Service Commission, they are dismissed with prejudice as against each defendant.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED That, to the extent that plaintiffs' Complaints allege a cause of action under 42 U.S.C. § 1983 based on due process violations resulting from statements allegedly made to the Minnesota State Unemployment Insurance Division, they are dismissed with prejudice as against each defendant.

IT IS FINALLY ORDERED, ADJUDGED AND DECREED That, to the extent that plaintiffs' Complaints allege a cause of action based on the Minnesota Government Data Practices Act, they are dismissed without prejudice as against each defendant.